Francis
v
Church and
others.

## FRANCIS *vs.* CHURCH and others.

Where the veracity of the deponents to affidavits in support of a motion is impeached by affidavits read at the hearing of the motion, the affidavits of such deponents will not be wholly rejected, nor will they be fully credited ; but the affidavits upon both sides will be taken into consideration with other circumstances, by the court, in deciding upon the merits of the motion. *Quære,* as to the practice in such cases.

A purchaser by contract of a portion of mortgaged premises, and who has paid the whole purchase money so as to entitle him to a deed, may have an order for a re-sale of the mortgaged premises sold by virtue of a decree under the elder mortgage, if he has been misled or surprised by any art, or connivance, or studied concealment of facts, of the person for whose benefit the sale was made.

A re-sale is not generally ordered for mere inadequacy of price ; but it will be where there has been any surprise produced by the act of the person making it, or where the person seeking to open the sale, having an interest, has been misled by the device or concealment of the person making the sale.

A re-sale of mortgaged premises is only ordered upon terms ; and the proper terms to be imposed, depend upon the circumstances of each case.

PETITION for opening sale of mortgaged premises, made by a master. The complainant in this suit, became the assignee of a mortgage upon one hundred and sixty acres of land—the mortgage amounting to less than $1,000. The defendant Church was the owner of the land, and contracted to sell sixty acres of it to Dolph, another defendant, who had paid Church the purchase money, and was entitled to a deed. The complainant commenced the foreclosure of his mortgage, and obtained a decree in November last, and the premises were sold under this decree by a master, on the 15th January last, and bid in by the complainant in separate parcels,

for a nominal sum, and the complainant obtained a master's deed, and the report of sale was confirmed. The complainant has since paid nearly $200 upon a prior mortgage. Dolph, the vendee of the sixty acres, presents a petition for a re-sale, accompanied by several affidavits, in which it is alleged that the complainant made an agreement with Church not to sell until spring, under his decree. The petitioner himself, two days before the sale, being himself ignorant that the premises were advertised, saw the complainant in relation to it, who did not inform him that the premises were advertised, and left him to understand that Church might have made some arrangement for farther time. The complainant's affidavit, and that of his clerk, deny to some extent the truth of the affidavits in favor of the petitioner ; and he also presents affidavits fully impeaching the credit both of Dolph, the petitioner, and of Church, one of the defendants. The affidavits are contradictory.

*O. Hastings*, for the complainant.

*H. D. Tucker* and *A. Gardiner*, for petitioner.

The Vice Chancellor. The first question that presents itself, is one of practice upon motions and petitions of this character. There are the affidavits of four witnesses impeaching fully the credit of the petitioner Dolph, and affirming that he is not to be believed upon oath. There are the affidavits of eight witnesses, impeaching in like manner the credit of the defendant Church. If these affidavits are to be relied upon, and the depositions of these two persons, in consequence, to be disregarded, there is but little proof remaining to sustain the claim of the pe-

titioner. It is not the most satisfactory mode to try any question of fact upon *ex parte* affidavits, when there is no opportunity of cross examining the witnesses, especially when such affidavits are contradictory in their character. It is, least of all, a satisfactory mode of impeaching the credit of a deponent to such affidavits, upon the truth of counter affidavits, produced for the first time at the hearing, and which the other party has no means or mode of rebutting. I have looked through the books to ascertain, if I can, whether such affidavits impeaching the credit of a deponent, are admissible ; or if admissible, what force they are to have ; but I can find no light to guide me. All the parties and witnesses may be presumed to be, as in this case they in fact are, unknown to the court. I cannot try their credibility in any way, except upon proof; and in a case like this, the party impeached can have no opportunity to sustain his character by counter proofs. This, certainly, a witness or party whose credibility is impeached, should have.

If such opportunity is not given to support the character thus assailed, any man's character may be taken away by affidavits procured for the purpose, and of which both the party and the witness only hear for the first time at the trial, and without any opportunity to rebut it. When a person is examined as a witness in a cause, and his credibility is impeached by testimony, the party calling him has a right to sustain his character by counter proofs and without notice. In a case like this, the right is virtually denied to sustain an assailed character. I cannot feel safe wholly to reject these impeaching affidavits, neither can I feel it right or just to give them

Feb. 1841. that weight which a successful impeachment of a witness would have, when the witness or the party calling him had an opportunity to sustain his credibility. These affidavits may be taken into account, with other circumstances, to guide the court in the decision of this motion. It is a question of veracity and credit between the deponents to conflicting affidavits as to facts which constitute the merits of the cause. The deponents whose credit is impeached, ought not to have the same influence as those whose credit is not impeached. Neither ought their affidavits to be wholly disregarded, when they have had no opportunity of sustaining their character.

Francis
v.
Church and others.

As to the merits of the question, this court has had occasion, in several cases, to determine the principles upon which a re-sale will be ordered or refused. The principles upon which a re-sale will be ordered, were collated from decided cases, recently in Gardiner vs. Schermerhorn and others (*ante*, 101). The only duty of the court here, is to ascertain from the facts presented, whether this case comes within the principles heretofore settled.

As a general rule, this court have not followed the practice of the English court of Chancery, in opening biddings or directing a re-sale merely from an offer of an advanced price. To entitle a petitioner to an order for a re-sale, he must show that he has been *misled* or *surprised* by the act of a party interested in or conducting the sale, or some other circumstances entitling him to the equitable relief asked for. When the petitioner himself, being of full age, has been negligent and inattentive, and suffered the sale to proceed without any attention or inquiry, and no contrivance has been used to mislead or blind him, the sale

will not be opened upon his application. Mere ina-
dequacy of price is not sufficient of itself to direct a
re-sale ; and this court will not give aid to those who
have been negligent of their own interests at the time
when they should have been attentive.

In this case, Dolph, the petitioner, being the ven-
dee, by contract, of sixty acres of the mortgaged
premises, and having paid the full price therefor, pre-
sents a strong claim for equitable relief, if the cir-
cumstances will warrant the concession of the favor.
Church had the fee of the whole mortgaged premi-
ses. He swears that he had made an arrangement
with the complainant for the postponement of the
sale of the premises until spring, and that he so in-
formed the petitioner Dolph. The petitioner, not
wholly relying upon this representation, saw the com-
plainant twice in relation to the same matter, and
was given to understand that the sale would not be
pressed. The last interview was two days only be-
fore the sale. At this time the complainant used
such language as was well calculated to lull the pe-
titioner into security, and did not inform him that the
sale was to take place within the next forty-eight
hours.

It is true that the complainant and his clerk have
both made affidavits contradictory, to a considerable
extent, of the affidavits of Church and Dolph ; and
it is true, also, that they have furnished several affi-
davits that Church and Dolph are not worthy of cre-
dit. But it is to be remarked, that the affidavits of
the complainant and his clerk are guarded, and pre-
sent the appearance of being somewhat evasive. If
we should have some doubts of the degree of credit
to be attached to the two above affidavits presented

Feb. 1841.

Francis
v.
Church and
others.

by the petitioner, yet there are two other affidavits, the deponents to which are not impeached, showing nearly the same state of facts. I allude to the affidavits of Wood and Daniels. Daniels, particularly, swears that the complainant informed him that he had agreed with Church not to advertise the mortgaged premises until spring. None of the parties who had made affidavits and who were interested in the premises as against the complainant, knew that the premises were advertised ; and the complainant seems to have sedulously concealed that fact, and, indeed, seems to have wished that the fact of sale should remain concealed until the order of confirmation of the sale was passed. From the whole papers I imbibe the impression that the complainant was willing to have the subsequent incumbrancers and claimants upon the premises, ignorant of the fact that a speedy sale would be pressed. He was willing, at least, to permit them to labor under the erroneous impression that the sale would be postponed until spring. If he did not actually deceive them into such belief, he left them in ignorance of the fact that the premises were to be speedily sold ; and they were thus *misled* by the contrivance or culpable concealment of important facts, by the complainant.

The actual sale, at the time it took place, was evidently a *surprise* upon the defendants, and a *surprise* produced at least by the connivance of the complainant. His object in removing competition at the sale, is apparent. In addition to his mortgage, he held claims against Church, posterior in point of time to other incumbrances upon the property. If he could purchase the premises at a small price, he would not only obtain his mortgage, but all his other

claims, and make a good speculation besides.  If

this advantage had been acquired fairly, and without
any arts, contrivance, or concealment on the part of
the complainant, to mislead or surprise the other par-
ties—if the other parties had been negligent or inat-
tentive, and made no inquiry in relation to the sale,
I should have held that the complainant was fully
entitled to the advantage so obtained.  But while the
court will confirm fair and open sales where there
has been frankness and openness on the part of those
conducting or interested in them, however inadequate
the price may be ; yet they will frown upon any du-
plicity, unfairness, or culpable concealment by which
parties may be misled.  As I look at this case, the
facts presented to justify a re-sale, are stronger than
those in the case of Collier vs. Whipple, 13 Wendell,
224 ; or than those in the case of Williams vs. Dade,
3 Johns. Chan. Rep. 290 ; in both of which a re-sale
was ordered.  The case of Duncan vs. Dodd, 2
Paige, 99, is not exactly analagous, but some of its
principles are applicable here.

A re-sale in this case must be ordered ; and inas-
much as the complainant has paid something upon a
prior incumbrance, the amount so paid by him, with
interest, must, upon such re-sale, be paid to the
complainant, in addition to the amount due upon his
own mortgage.  But the complainant has not beha-
ved with that fairness to entitle him to the full in-
demnity as to costs and expenses, which a fair pur-
chaser is always entitled to upon a re-sale.

If within fifteen days, the petitioner or any person
in his behalf, shall deposit with the master the sum
of one thousand dollars as a bid upon the one hun-
dred acres not contracted to be sold to Dolph, the

master must advertise the property again, and re-sell the same upon the ordinary notice; and upon such re-sale, he must offer the said one hundred acres for sale first, and the remaining sixty acres last, in case the first parcel does not produce sufficient to pay the complainant according to the original decree. In case of a sale, the master is to pay the complainant the amount due on his mortgage, with the costs of his foreclosure suit, and the amount paid by him upon any prior incumbrance to such mortgage. The costs of the first and second sales are to be charged upon the property, and neither party is to have costs of this application as against the other. In case the deposit of one thousand dollars is made with the master, the master may immediately and before sale pay therefrom to the complainant the amount due upon his mortgage, with the costs of foreclosure, and the costs of the first sale if they have been paid by him, and the amount which he has paid upon any incumbrance prior to the complainant's mortgage, if such deposit is sufficient for that purpose; or if not, to pay over the whole deposit as a payment, *pro tanto.*